IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOE BUICE, | Civil Action No. |
| Plaintiff, | 1:22-cv-02366-SCJ-CCB |
| v. | JURY TRIAL DEMANDED |
| GWINNETT COUNTY SHERIFF'S OFFICE, JOHNATHAN KEITH "KEYBO" TAYLOR, in his individual and official capacities, and CLEOPHAS ATWATER, in his individual and official capacities, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.     INTRODUCTION

The purpose of this Motion for Partial Summary Judgment is simply to narrow the issues for trial by dismissing two meritless defenses asserted by Defendants Johnathan Keith "Keybo" Taylor and Cleophas Atwater ("Defendants"): Failure to Mitigate Damages and After-Acquired Evidence.

For the Failure to Mitigate defense, Defendants bear the burden of proving that Plaintiff Joe Buice ("Plaintiff" or "Mr. Buice") failed to use diligent efforts to

obtain replacement employment after his termination, and that such failure caused him to not obtain substantially equivalent employment that was available, thereby preventing his damages from being mitigated by a proven, specified amount. Defendants do not meet this burden because they have not identified any evidence to prove any of the above requirements of the defense. Moreover, Defendants' own actions in reporting Mr. Buice to the accrediting agency for Georgia law enforcement officers prevented him from obtaining substantially equivalent employment for months. Defendants may not claim Mr. Buice was not diligent in obtaining mitigating employment when their own actions thwarted his attempts to find such employment.

For the After-Acquired Evidence defense, Defendants bear the burden of proving that, after Plaintiff's termination, they discovered he engaged in wrongdoing that alone would have resulted in termination. Defendants cannot satisfy this heavy burden because they admit they do not know whether Mr. Buice would have been terminated for the alleged wrongdoing. At most, Defendants say they would have issued or recommended a Notice of Intent to Terminate, but they cannot say whether any such termination would have ultimately occurred.

For these reasons, and the reasons set forth below, Plaintiff respectfully requests that his Motion for Partial Summary Judgment be GRANTED and that

Defendants' Failure to Mitigate and After-Acquired Evidence defenses be DISMISSED.

## II.    STATEMENT OF FACTS

Plaintiff hereby incorporates by reference his Statement of Undisputed Material Facts filed contemporaneously herewith.

## III.    SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56(a) authorizes summary judgment when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." A dispute of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The substantive law applicable to the case determines which facts are material. *Id.* Pursuant to Rule 56(a), "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." The Court is thus permitted to grant summary judgment with respect to "only some claims in a multiple claim action." *Evergreen Int'l, S.A. v. Marinex Const. Co., Inc.,* 477 F. Supp. 2d 697, 699 (D.S.C. 2007).

Where the *moving* party bears the burden of proof, he must support his motion with admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331

(1986). Where, however, the *non-moving* party bears the burden of proof – as Defendants do with respect to the affirmative defenses at issue in this Motion – the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of Defendants' affirmative defense. *Id.* When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id*. at 323 (emphasis in original). Instead, the moving party may discharge its burden in this situation simply by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must set forth specific facts showing that there is a genuine issue of material fact precluding summary judgment. *Clark v. Coats & Clark, Inc.*, 939 F.2d 604, 608 (11th Cir. 1991).

## IV.    ARGUMENT AND CITATION OF AUTHORITY

### a.    <u>Failure to Mitigate Defense</u>

A defendant must support the defense of failure to mitigate damages by proving: (i) that the employee failed to be reasonably diligent in seeking substantially equivalent employment, (ii) that the lost wages would have been less but for the lack of diligent efforts and (iii) the amount by which the lost wages

would have been mitigated. *See E.E.O.C. v. Joe's Stone Crab, Inc.*, 15 F. Supp. 2d 1364 (S.D. Fla. 1998).

Therefore, in order to assert the defense of Failure to Mitigate Damages, the employer must prove several specific things:

First, the employer must prove that the employee failed to be reasonably diligent in seeking alternative employment. This requires, at a minimum, some articulation of what the employee failed to do which he should have done.

Second, the employer must prove causation, i.e., that the damages would have been lower but for the lack of diligent efforts. This requires a showing that there were substantially equivalent positions which the employee, as a result of failing to use diligent efforts, failed to obtain.

Third, the employer must prove the amount by which the damages would have been mitigated, by showing the date by which the plaintiff would have obtained substantially equivalent employment and the amount which would have been earned in the substantially equivalent position after termination.

### i. Defendants' Failure to Provide Evidence

Defendants assert the following as their ninth affirmative defense in their Amended Answer: "Plaintiff's claims for damages may be barred, in whole or in part, to the extent he has failed to act reasonably to mitigate any damages claimed

in the instant case, as required by law." [Doc. 47, p. 5]. However, pleading the defense is not enough. Defendants bear the burden of <u>proving</u> this affirmative defense. *Joe's Stone Crab*, 15 F. Supp. 2d at 1378. And Defendants have utterly failed to meet that burden.

This failure begins with Defendants' non-answer to Plaintiff's discovery request about this issue. Plaintiff asked Defendant to identify (i) every additional effort Defendants contend Plaintiff was obligated to expend to locate comparable employment, (ii) the anticipated cost to Plaintiff of such additional efforts, (iii) the date upon which Plaintiff would have found comparable employment, (iv) the amount by which such efforts would have mitigated Plaintiff's damages, (v) whether Defendants took any actions that were likely to or calculated to interfere with or assist with Plaintiff's mitigation efforts, and (vi) every position for which Plaintiff is qualified that Defendants contend he should have received. (DEF Disc. Responses[1] # 46). In response to this searching inquiry, Defendants provided the most vague and meaningless of answers (copied below in its entirety):

> Defendants are still evaluating Plaintiff's mitigation efforts and have not yet deposed Plaintiff. As such, Defendants will supplement their response as necessary following the taking of Plaintiff's deposition.

---

[1] See Plaintiff's Appendix of Exhibits for Motion for Partial Summary Judgment, filed herewith, for a listing of all exhibits referenced herein, along with their abbreviations.

*Id*. Plaintiff's deposition has come and gone. Defendants have not supplemented their information-free response. Nor have they identified which documents or testimony they rely upon for the defense. This is grounds for concluding Defendants have no such evidence.

       ii.  <u>Defendants Cannot Prove Plaintiff Failed to Diligently Seek Substantially Equivalent Employment Because Plaintiff Sought Employment, but Was Thwarted by the Effect of Defendants' Conduct.</u>

Because Defendants bear the burden of proof on the Failure to Mitigate affirmative defense, Plaintiff is not required to submit evidence at summary judgment negating an element of the defense. *Celotex Corp.*, 477 U.S. at 323. Instead, Plaintiff need only show that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Thus, Defendant's failure to identify evidence, as set forth *supra*, is sufficient to dismiss this defense. Nevertheless, Plaintiff can also show that Defendants' own actions thwarted his diligent efforts to obtain substantially equivalent employment. And Defendant cannot prove otherwise.

    1.  <u>Law re: the "Failure to Use Diligent Efforts" Prong.</u>

"While the injured victim has a duty to mitigate damages by being reasonably diligent in seeking substantially equivalent employment, the burden of

proving lack of diligence is on the employer." *EEOC v. Massey Yardley Chrysler Plymouth, Inc.* 117 F.3d 1244, 1251-52 (11th Cir. 1997).

The employer does not meet its burden merely by proving that the employee was unsuccessful in finding interim employment. The law only requires of the employee "reasonable exertions in this regard, not the highest standard of diligence." *N.L.R.B. v. Arduini Mfg. Corp.*, 394 F.2d 420, 423 (1st Cir. 1968). As another district court in this Circuit aptly put it:

> Clearly, the "reasonable diligence" standard set forth in the statutory language does not require a wrongfully discharged employee to search indefinitely for substitute employment; the employee must merely "use reasonable diligence in finding other suitable employment." *Ford Motor Co. v. Equal Employment Opportunity Commission*, 458 U.S. 219, 231, 73 L. Ed. 2d 721, 102 S. Ct. 3057 (1982); *see also Brady v. Thurston Motor Lines*, 753 F.2d 1269, 1273 (4th Cir. 1985). To meet this requirement, the discriminatee "need not go into another line of work, accept a demotion, or take a demeaning position." *Ford Motor Co. v. EEOC*, 458 U.S. at 231 (footnote omitted). Moreover, where a claimant, after failing despite diligent efforts to find comparable employment, has accepted a lower paying job, the duty to mitigate does not require him or her to continue a search for higher paid employment. *Brady v. Thurston Motor Lines*, 753 F.2d at 1274.

*Sennello v. Res. Life Ins. Co.*, 667 F. Supp. 1498, 1513 (S.D. Fla. 1987) (emphasis added). Moreover, as the Eleventh Circuit has held, the employee has no duty to seek or accept dissimilar employment:

> "Substantially equivalent employment" is employment that affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status to those available to

employees holding the position from which the Title VII claimant has been discriminatorily terminated.

*Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1526 (11th Cir. 1985) (cleaned up).

        2.  <u>Mr. Buice Used Diligent Efforts to Obtain Substantially Equivalent Employment, but was Thwarted by the Effect of Defendants' Conduct.</u>

Where an employer's actions resulted in the plaintiff's inability to hold or seek other employment, the employee remains entitled to recover back wages. As the Eleventh Circuit explained:

> Generally, a Title VII plaintiff can recover back pay only for the period the plaintiff is "available and willing to accept substantially equivalent employment" elsewhere; courts exclude periods where a plaintiff is unavailable to work, such as periods of disability, from the back pay award. *See Miller v. Marsh*, 766 F.2d 490, 492 (11th Cir.1985). Successful Title VII claimants, however, are presumptively entitled to back pay. *See EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1251 (11th Cir.1997). Courts resolve uncertainties in back pay in favor of the discrimination victim. *See Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 260-61 (5th Cir.1974), *cert. denied*, 439 U.S. 1115, 99 S. Ct. 1020, 59 L. Ed. 2d 74 (1979). The district court, after reviewing all the evidence, specifically found that DCYS's conduct caused Lathem's disability and that this disability precluded her from obtaining other employment. Accordingly, we hold that a Title VII claimant is entitled to an award of back pay where the defendant's discriminatory conduct caused the disability. *See, e.g.*, *Sowers v. Kemira, Inc.*, 701 F. Supp. 809, 826 (S.D.Ga.1988) (finding that excluding a back pay award based upon a plaintiff's disability would be unfair when the defendant caused the disability). Therefore, the district court did not err in awarding Lathem back pay.

*Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999). The Eleventh Circuit then specifically applied this principle to the Failure to Mitigate defense: "we hold that the mitigation requirement does not apply to a Title VII plaintiff where the defendant's discriminatory conduct resulted in the disability that prevents the plaintiff from finding other employment." *Id.*

This rule – applied in a different context – controls the Failure to Mitigate analysis in this case. While Defendants did not necessarily cause Mr. Buice to suffer a disability, the discriminatory termination (even if characterized as a forced retirement in lieu of termination) prevented him from obtaining other employment in law enforcement. *See Weaver*, 922 F.2d at 1526 ("'Substantially equivalent employment' is employment that affords virtually identical . . . job responsibilities, working conditions, and status"); *Sennello*, 667 F. Supp. at 1513 ("the discriminatee 'need not go into another line of work'").

Here, Defendants reported to the Georgia Peace Officer Standards & Training Council ("POST")[2] that Mr. Buice had retired in lieu of termination.[3]

---

[2] POST is the agency that certifies law enforcement officers in Georgia. (Buice PMSJ Decl. ¶ 16).

[3] Defendants were required by POST regulations to report to POST every termination or resignation/retirement taken in lieu of termination. (Taylor Depo. Day 1 190:20-192:4; Jones Depo. 19:12-20:24). But this doesn't let Defendants off the hook. The discriminatory act here is terminating Mr. Buice (or forcing him to retire in lieu of termination). The mandated report to POST – and its adverse impact on Mr. Buice's job search – are the effects of Defendants' discriminatory action.

(Taylor Depo. Day 1 190:20-192:4; Jones Depo. 19:12-20:24; Atwater Depo. 166:22-167:6). POST then conducted an investigation as to whether Mr. Buice's law enforcement credentialing should be revoked. (Buice Depo. 211:24-212:24). The investigation concluded on December 8, 2021, with POST concluding that "no action" would be taken against Mr. Buice. (12/8/21 POST Discipline Notification).

Defendants' report to POST thwarted his attempts to find substantially equivalent employment in law enforcement. Mr. Buice had been working for the Gwinnett County Sheriff's Office for over 22 years – since November 1998. (Buice Depo. 48:7-11). After more than two decades in law enforcement, that was his "line of work[4]." (Buice Depo. 272:20-23) ("My job's law enforcement and doing stuff like that[.]"). So, he searched for another job in law enforcement, contacting the various law enforcement contacts – "chiefs and sheriffs" – he had developed over his decades-long career and inquiring about job openings. (Buice Depo. 270:20-272:23; Buice PMSJ Decl. ¶¶ 20-21). Unfortunately, every law enforcement contact told him the same thing – that they could not hire him while he was under investigation by POST and that he had to wait "on P.O.S.T. to clear their investigation." (Buice Depo. 270:20-272:7; Buice PMSJ Decl. ¶ 22). However, things didn't improve after POST completed its investigation and chose

---

[4] *Sennello*, 667 F. Supp. at 1513 ("the discriminatee 'need not go into another line of work'").

not to sanction Mr. Buice. Even after the POST investigation was concluded, Mr. Buice's law enforcement contacts told him that they could not hire him because his POST file still said he had retired in lieu of termination and because that file reflected that the Gwinnett County Sheriff's Office had classified him as "not eligible for rehire." (Buice PMSJ Decl. ¶ 23).

The evidence, therefore, shows that Plaintiff's failure to hold interim employment in law enforcement is owing to Defendants' conduct. Defendants have failed to show lack of diligence on Plaintiff's part.

### 3. Mr. Buice Ultimately Obtained Mitigating Employment.

In addition, Defendants cannot establish that Mr. Buice failed to use diligent efforts to obtain mitigating employment because, after his attempts to find employment in law enforcement were thwarted by Defendants' actions, he ultimately found employment in a law-enforcement-like position.

In small part, Mr. Buice's losses were mitigated by a part-time job with JDS Holding, LLC starting in November 2021, where he provided part-time services as security and a driver for a particular individual 2-3 times per month at a rate of $250 per day. (Buice Depo. 266:18-267:24; Buice PMSJ Decl. ¶ 24).

However, the primary mitigation came from full-time employment with United Tactical System, LLC starting in January 2022 – the month after POST

12

concluded its investigation. (Buice Depo. 264:19-265:13; Buice PMSJ Decl. ¶ 25).

In his position with United Tactical, Mr. Buice provides training to law enforcement on de-escalation and non-lethal use of force. (Buice Depo. 264:19-265:13; Buice PMSJ Decl. ¶ 26). When he was hired in January 2022, United Tactical paid Mr. Buice an annual salary of approximately $65,000. (Buice PMSJ Decl. ¶ 27). Starting in or around August 2022, Mr. Buice received a raise to an annual salary of approximately $72,500. (Buice PMSJ Decl. ¶ 28). Finally, starting March 2024, Mr. Buice received a promotion from United Tactical, with a raise in his annual salary to approximately $95,000. (Buice PMSJ Decl. ¶ 29).

This does not fully mitigate Mr. Buice's losses compared to the approximately $125,000[5] he was earning each year while working for Defendants. (Buice PMSJ Decl. ¶¶ 7-12). But "where a claimant, after failing despite diligent efforts to find comparable employment, has accepted a lower paying job, the duty to mitigate does not require him or her to continue a search for higher paid employment." *Sennello*, 667 F. Supp. at 1513.

In sum, after his termination, Mr. Buice was prevented from obtaining substantially equivalent employment in law enforcement because Defendants

---

[5] Exclusive of benefits, but inclusive of (1) base salary, (2) overtime, and (3) income earned from non-County employers who hired him part-time when he was an off-duty law enforcement officer.

illegally terminated him and, as part of that termination, reported the adverse action to POST. Nevertheless, Mr. Buice diligently pursued and obtained full-time employment that utilizes his decades of law enforcement experience. Defendants have failed to show a lack of diligent efforts on Mr. Buice's part. Nor have Defendants identified any additional efforts he should have taken.

### iii.  Defendants Have Not Identified Any Substantially Equivalent Employment Plaintiff Could Have Obtained with Additional Effort.

Even if Defendants had proven Mr. Buice did not act with diligence, they also bear the burden of proving that there was substantially equivalent employment available. As was held by the former Fifth Circuit[6] in *Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972):

> On this appeal, the appellees do not claim that at trial it was proved that there were teaching jobs available for which Mr. Bozeman would have qualified had he applied. It merely asserts that Mr. Bozeman did not expend sufficient effort to find other teaching employment. The appellees' position is without legal justification. As the Eighth Circuit held in *Hegler v. Board of Education of the Bearden School District*, 8 Cir. 1971, 447 F.2d 1078, 1081:
>
> > The defendant-appellee (school board) has to show not only that the plaintiff-appellant failed to use reasonable care and diligence, but that there were jobs available

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

which appellant could have discovered and for which she
was qualified.

The same holding was reached in *Ballard v. El Dorado Tire Co.*, 512 F.2d 901, 906 (5th Cir. 1975), in which the Court held that "[a]ll the authorities which have addressed the question answer that an employee's damages are reduced only if the employer proves with reasonable certainty that employment was available in the specific line of work in which the employee was engaged."

Proof of "substantially equivalent employment" requires more than a showing that there was <u>some</u> job available. As noted *supra*, the Eleventh Circuit has held that "substantially equivalent employment" is that which "affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status to those available to employees holding the position from which the Title VII claimant has been discriminatorily terminated." *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1526 (11th Cir. 1985) (cleaned up).

Defendants have not identified any substantially equivalent employment that Mr. Buice could have obtained with more diligent efforts.

    iv.   <u>Defendants Have Not Proven the Amount by Which Plaintiff's Back Pay Should be Mitigated.</u>

Defendants must also prove the amount by which the back pay award should be reduced. "While the law is clear that actual interim earnings and losses willfully

incurred will be deducted from gross pay, the burden is on the employer to prove such earnings or losses." *N.L.R.B. v. Pilot Freight Carriers, Inc.*, 604 F.2d 375, 377 (5th Cir. 1979) (internal citations omitted).

Defendants have failed to show evidence that Plaintiff *would have* obtained employment in a substantially equivalent position, *when* Plaintiff would have obtained such employment, or *how much* such employment would have mitigated his losses. Since Defendants have failed to show any evidence when any such employment would have been obtained, they have necessarily failed to show by how much Plaintiff's losses would have been reduced.

In sum, Defendants have entirely failed to produce evidence to meet <u>any</u> of the elements of the Failure to Mitigate Defense. Therefore, summary judgment should be GRANTED dismissing that affirmative defense.

### b.  <u>After-Acquired Evidence Defense</u>

Defendants' tenth affirmative defense in the Amended Answer asserts the After-Acquired Evidence defense and reads as follows: "Plaintiff's claims for damages are barred, in whole or in part, due to the discovery of after-acquired evidence. Specifically, it was discovered during Plaintiff's deposition that he covertly recording [*sic.*] a March 22, 2021 meeting with his supervisor and Defendant Atwater in violation of GCSO policy. Had this been known at the time,

it would have served as an independent, additional non-discriminatory basis for Plaintiff's termination." [Doc. 47, p. 5]. However, Defendants once again fail to meet their burden on the affirmative defense.

The After-Acquired Evidence defense, the parameters of which were established in *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362-63 (1995), requires, as an affirmative defense, that the employer meet a stringent standard of proof:

> Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge.

If a defendant prevails on this defense, then an otherwise successful plaintiff is generally precluded from recovering front pay or being reinstated and is limited to recovering backpay "from the date of the unlawful discharge to the date the new information was discovered." *Scoggins v. Floyd Healthcare Mgmt.*, No. 4:14-CV-00274-HLM-WEJ, 2016 U.S. Dist. LEXIS 201663, at *98 (N.D. Ga. June 10, 2016) (quoting *McKennon*, 513 U.S. at 361-62).

The elements of the After-Acquired Evidence defense are as follows: "(1) a wrongdoing (2) of such severity (3) that the employer would have terminated the plaintiff had it known of the misconduct prior to the actual discharge." *Scoggins*,

17

2016 U.S. Dist. LEXIS 201663 at *98. Because it is an affirmative defense, the burden of establishing every element of the After-Acquired Evidence defense is on the defendant employer. *Holland v. Gee*, 677 F.3d 1047, 1065 (11th Cir. 2012).

Crucially, the After-Acquired Evidence defense cannot be used to deny back pay "simply because the employer <u>could have</u> terminated an employee" for the asserted reason. *Id*. (emphasis added). Rather, "the burden is on the employer to prove that 'the wrongdoing was of such severity that the employee <u>in fact would</u> <u>have been terminated</u> on those grounds alone.'" *Id*. (quoting *McKennon*, 513 U.S. at 362-63) (emphasis added). This is where Defendants stumble. They assert a justification for which they claim they <u>could</u> have terminated Mr. Buice, and even that they would have recommended issuing a Notice of Intent to Terminate. But they cannot prove Mr. Buice <u>would have</u> been terminated.

### i. <u>The Merit Board Appeal Process.</u>

To understand this argument, it is first necessary to understand Gwinnett County's process for appealing terminations. Employees in the Gwinnett County Merit System who are terminated have the right to appeal the termination to the Gwinnett County Merit Board. (30(b)(6) Depo. Day 2 262:23-263:18; Taylor Depo. Day 1 51:10-52:25). If the appeal is successful, the Board would overrule the termination and reinstate the terminated employee. (30(b)(6) Depo. Day 2

262:23-263:18). Mr. Buice was employed under the Merit System and, thus, had the right to appeal his termination to the Merit Board. (Buice Depo. 91:22-92:15; Taylor Depo. Day 1 180:3-11).

      ii.  <u>Defendants' Contention Regarding the Importance of the Merit Board Appeal Process to This Case.</u>

Defendants – particularly Defendant Atwater – contend that Mr. Buice was not terminated when Defendants issued him a Notice of Intent to Terminate. (Atwater Depo. 171:22-172:17). The reason Defendants contend there was no termination at the time they issued the Notice of Intent to Terminate is that Mr. Buice still had the opportunity to appeal the termination to the Merit Board; therefore, they contend, the termination would not be final until the Merit Board ruled on it. (Atwater Depo. 171:22-172:17).[7]

      iii.  <u>Mr. Buice Records a Meeting with Defendant Atwater. Defendant Atwater's Contention Regarding Discipline for that Recording.</u>

After Defendants issued the Notice of Intent to Terminate, Mr. Buice secretly recorded the March 22, 2021, meeting he had with Defendant Atwater and another supervisor about that Notice. (Buice Depo. 187:8-188:17, 191:5-11). He

---

[7] The Notice of Intent to Terminate was, nonetheless, an adverse employment action. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 257, 101 S. Ct. 498, 504 (1980). *See also Freytes-Torres v. City of Sanford*, 270 F. App'x 885, 893 (11th Cir. 2008), recognizing that *Stavropoulos v. Firestone*, 361 F.3d 610, 616-17 (11th Cir. 2004) had been overruled.

believed that a secret recording was the best way to accurately capture any evidence of wrongdoing that may arise during that meeting. (Buice Depo. 191:5-11; Buice PMSJ Decl. ¶ 15).

Defendant Atwater testifies that this covert recording was in violation of Gwinnett County Sheriff's Office policy, and provided a basis for discipline, up to and including termination. (30(b)(6) Depo. Day 2 263:19-265:8). Therefore, he testifies that, had he known about the recording he would have "recommended or issued a Notice of Intent to terminate for that additional reason." (30(b)(6) Depo. Day 2 264:25-265:13).

        iv.  <u>Defendants' Admission that They Do Not Know Whether Mr. Buice Would Have Been Terminated for the Recording Because They Cannot Know Whether the Merit Board Will Uphold Any Particular Termination.</u>

Note what Defendant Atwater says he would have done. He says he would have issued – or even just recommended issuance of – a Notice of Intent to Terminate. He does <u>not</u> say that Mr. Buice would have been terminated. After all, Defendants contend that a Notice of Intent to terminate is not the same as a termination, and that no termination occurs until the Merit Board upholds the termination decision. (Atwater Depo. 171:22-172:17).

But Defendant Atwater admits that, had he issued a Notice of Intent to Terminate for the recording, Mr. Buice would have had the right to appeal that

termination decision to the Merit Board. (Atwater Depo. 171:22-173:10). He further admits that he doesn't know whether Mr. Buice would have been fired or not, because he doesn't know whether the Board would have overruled or sustained the termination. (Atwater Depo. 171:22-173:10). Defendant Taylor similarly admits he doesn't know whether the Board would have sustained Mr. Buice's termination. (Taylor Depo. Day 1 189:14-24). The Merit Board appeal process, like litigation, is an inherently uncertain process. *See* (Taylor Depo. Day 1 188:14-189:2) ("He had an appeal process that he could have gone through, you know, maybe won, maybe not won.").

The very officials who say Mr. Buice should have been terminated for the recording admit that they could only issue a Notice of Intent to Terminate, and that they cannot know whether that termination would have been carried out by the Board. An analogy can be made to *Scala v. City of Winter Park*, 116 F.3d 1396, 1403 (11th Cir. 1997), in which the Eleventh Circuit held that neither of the officials who purportedly decided to terminate the plaintiff were the "final policymaker with respect to termination decisions" for purposes of Section 1983 because "the City Civil Service Board has the power to reverse any termination decision." In the same way, the Merit Board had the power to reverse Mr. Buice's termination.

Therefore, Defendants cannot prove Mr. Buice "in fact would have been terminated" for the recording alone. *Holland v. Gee*, 677 F.3d 1047, 1065 (11th Cir. 2012). Defendants cannot prove the After-Acquired Evidence defense and summary judgment should be GRANTED against that defense.

## V.    CONCLUSION

For the foregoing reasons, Mr. Buice respectfully requests that this Court GRANT his Motion for Partial Summary Judgment, dismissing Defendants' ninth (Failure to Mitigate) and tenth (After-Acquired Evidence) affirmative defenses.

Respectfully submitted this 15th day of March, 2024.

**BARRETT & FARAHANY**

s/ *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110

*Attorney for Plaintiff Joe Buice*

P.O. Box 530092
Atlanta, GA 30353
(404) 214-0120
matt@justiceatwork.com

## <u>CERTIFICATION PURSUANT TO L.R. 7.1D</u>

I hereby certify that the foregoing *Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment* was prepared in conformance with the font and point selections approved by the Court in Local Rule 5.1.

**BARRETT & FARAHANY**

s/ *Matthew C. Billips*

Matthew C. Billips
Georgia Bar No. 057110

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CARMEN BETHANCOURT, | Civil Action No. |
| Plaintiff, | 1:22-cv-04211-TWT-CCB |
| v. | JURY TRIAL DEMANDED |
| WAL-MART STORES EAST, LP, | |
| Defendant. | |

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the *Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment* with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

John D. Bennett
jbennett@fmglaw.com
Emily M. Walker
emily.walker@fmglaw.com

**[SIGNATURE ON NEXT PAGE]**

Respectfully submitted this 15th day of March, 2024.

**BARRETT & FARAHANY**

s/ *Matthew C. Billips*

Matthew C. Billips
Georgia Bar No. 057110