IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOE BUICE,<br><br>　Plaintiff,<br><br>v.<br><br>GWINNETT COUNTY SHERIFF'S OFFICE, JOHNATHAN KEITH "KEYBO" TAYLOR, in his individual and official capacities, and CLEOPHAS ATWATER, in his individual and official capacities,<br><br>　Defendants. | Civil Action No.<br><br>1:22-cv-02366-SCJ-CCB<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S STATEMENT OF
UNDISPUTED MATERIAL FACTS**

**COMES NOW**, Plaintiff Joe Buice ("Plaintiff" or "Mr. Buice"), by and through his undersigned counsel, and hereby files this Statement of Undisputed Material Facts ("SUMF") in Support of his Motion for Partial Summary Judgment:

**Mr. Buice, Defendants, and Mr. Buice's Employment with the Sheriff's Office**

1. Plaintiff Joe Buice ("Plaintiff" or "Mr. Buice") is a white/Caucasian male and an American citizen. (Buice PMSJ Decl.[1] ¶ 3).

---

[1] See Plaintiff's Appendix of Exhibits, filed herewith, for a listing of all exhibits referenced herein and their abbreviations.

1

2. Mr. Buice was employed by the Gwinnett County Sheriff's Office (the "Sheriff's Office") for over 22 years – from November 1998 until March 26, 2021. (Buice Depo. 48:7-11; Buice PMSJ Decl. ¶ 4).

3. As of March 26, 2021, Defendant Johnathan Keith "Keybo" Taylor ("Defendant Taylor") was the elected Gwinnett County Sheriff. [Doc. 1 ¶ 7; Doc. 47 ¶ 7].

4. As of March 26, 2021, Defendant Cleophas Atwater ("Defendant Atwater") was a Department Director and the Acting Chief of the Sheriff's Office. [Doc. 1 ¶ 8; Doc. 47 ¶ 8].

**Mr. Buice's Income as Of the Date of His Termination[2]**

5. As of the date of his termination, Mr. Buice had reached the rank of lieutenant with the Sheriff's Office. (Buice PMSJ Decl. ¶ 5).

6. As of the date of his termination, Mr. Buice's base salary with the Sheriff's Office (exclusive of benefits) was $89,969.00 annually. (Buice PMSJ Decl. ¶ 7).

---

[2] The parties dispute whether Mr. Buice was "terminated." Plaintiff contends that he was terminated, but he acknowledges that there is a genuine dispute of material fact as to this issue, which must be resolved at trial. For purposes of Plaintiff's Motion for Partial Summary Judgment, however, that dispute need not be resolved. When Plaintiff refers herein to his termination or the date of his termination, he is referring to the end of his employment in March 2021, however that end is characterized.

7. Mr. Buice also earned substantial income from the Sheriff's Office by working overtime, thereby earning additional overtime pay. (Buice PMSJ Decl. ¶ 8).

8. In 2020, the last full calendar year before his termination, Mr. Buice's combined base salary + overtime pay from the Sheriff's Office was $118,989.70. (Buice PMSJ Decl. ¶ 9).

9. In addition, while he was employed by the Sheriff's Office, Mr. Buice was occasionally hired by private entities seeking the services of an off-duty law enforcement officer. (Buice PMSJ Decl. ¶ 10).

10. In 2020, the last full calendar year before his termination, Mr. Buice earned approximately $6,275 in off-duty work for private entities. (Buice PMSJ Decl. ¶ 11).

11. After his termination, Mr. Buice could no longer perform the above-referenced off-duty work for private entities, as they only wanted to hire individuals who were currently employed by a law enforcement agency. (Buice PMSJ Decl. ¶ 12).

**Defendants' Asserted Affirmative Defenses at Issue in This Motion**

12. Defendants' ninth affirmative defense in their Amended Answer reads as follows: "Plaintiff's claims for damages may be barred, in whole or in part, to

the extent he has failed to act reasonably to mitigate any damages claimed in the instant case, as required by law." [Doc. 47, p. 5].

13. Defendants' tenth affirmative defense in the Amended Answer reads as follows: "Plaintiff's claims for damages are barred, in whole or in part, due to the discovery of after-acquired evidence. Specifically, it was discovered during Plaintiff's deposition that he covertly recording [*sic.*] a March 22, 2021, meeting with his supervisor and Defendant Atwater in violation of GCSO policy. Had this been known at the time, it would have served as an independent, additional non-discriminatory basis for Plaintiff's termination." [Doc. 47, p. 5].

**The Merit Board Appeal Process**

14. Employees in the Gwinnett County Merit System who are terminated have the right to appeal the termination to the Gwinnett County Merit Board (the "Merit Board" or the "Board"). (30(b)(6) Depo. Day 2 262:23-263:18; Taylor Depo. Day 1 51:10-52:25).

15. If the appeal is successful, the Board would overrule the termination and reinstate the terminated employee. (30(b)(6) Depo. Day 2 262:23-263:18).

16. Mr. Buice was employed under the Merit System and, thus, had the right to appeal his termination to the Merit Board. (Buice Depo. 91:22-92:15; Taylor Depo. Day 1 180:3-11).

**The Notice of Intent to Terminate – and Defendants' Contentions Regarding the Import of That Notice**

17. On March 22, 2021, Defendants issued a Notice of Intent to Terminate to Mr. Buice. The Notice was submitted to Mr. Buice by Defendant Atwater. (Buice PMSJ Decl. ¶ 13).

18. Defendants – particularly Defendant Atwater – contend that Mr. Buice was not terminated when Defendants issued him the Notice of Intent to Terminate. (Atwater Depo. 171:22-172:17).

19. The reason Defendants contend there was no termination at the time they issued the Notice of Intent to Terminate is that Mr. Buice still had the opportunity to appeal the termination to the Merit Board. Defendants contend the termination would not be final until the Merit Board ruled on it. (Atwater Depo. 171:22-172:17).

**Mr. Buice Records a Meeting with Defendant Atwater Regarding the Notice of Intent to Terminate.**

20. After Defendants issued the Notice of Intent to Terminate, Mr. Buice secretly recorded the March 22, 2021, meeting he had with Defendant Atwater and another supervisor about that Notice. (Buice Depo. 187:8-188:17, 191:5-11).

21. Mr. Buice believed that a secret recording was the best way to accurately capture any evidence of wrongdoing/discrimination that may arise during that meeting. (Buice Depo. 191:5-11; Buice PMSJ Decl. ¶ 15).

**Defendant Atwater's Contention Regarding Discipline for that Recording**

22. Defendant Atwater testifies that this covert recording was in violation of Gwinnett County Sheriff's Office policy, and provided a basis for discipline, up to and including termination. (30(b)(6) Depo. Day 2 263:19-265:8).

23. Therefore, Defendant Atwater testifies that, had he known about the recording he would have "recommended or issued a Notice of Intent to terminate for that additional reason." (30(b)(6) Depo. Day 2 264:25-265:13).

**Defendants' Admission that They Do Not Know Whether Mr. Buice Would Have Been Terminated for the Recording Because They Cannot Know Whether the Merit Board Will Uphold Any Particular Termination**

24. Defendant Atwater admits that, had he issued a Notice of Intent to Terminate for the recording, Mr. Buice would have had the right to appeal that termination decision to the Merit Board. (Atwater Depo. 171:22-173:10).

25. Defendant Atwater further admits that he doesn't know whether Mr. Buice would have been fired or not, because he doesn't know whether the Board would have overruled or sustained the termination. (Atwater Depo. 171:22-173:10).

26. Defendant Taylor similarly admits he doesn't know whether the Board would have sustained Mr. Buice's termination. (Taylor Depo. Day 1 189:14-24). *See also* (Taylor Depo. Day 1 188:14-189:2) ("He had an appeal process that he could have gone through, you know, <u>maybe won, maybe not won</u>.").

**Defendants' Report Mr. Buice's Termination to the Georgia POST. POST Investigates and Takes No Action Against Mr. Buice.**

27. The Georgia Peace Officer Standards & Training Council ("POST") is the agency that certifies law enforcement officers in Georgia. (Buice PMSJ Decl. ¶ 16).

28. Defendants reported to POST that Mr. Buice had retired in lieu of termination. (Taylor Depo. Day 1 190:20-192:4; Jones Depo. 19:12-20:24; Atwater Depo. 166:22-167:6).

29. Law enforcement agencies in Georgia are required by POST regulations to report to POST every termination or resignation/retirement taken in lieu of termination. (Taylor Depo. Day 1 190:20-192:4; Jones Depo. 19:12-20:24).

30. POST then conducted an investigation as to whether Mr. Buice's law enforcement credentialing should be revoked. (Buice Depo. 211:24-212:24).

31. The investigation concluded on December 8, 2021, with POST concluding that "no action" would be taken against Mr. Buice. (12/8/21 POST Discipline Notification).

**Mr. Buice's Post-Termination Search for a Law Enforcement Job is Thwarted by Defendants' Report to POST**

32. After more than two decades in law enforcement, Mr. Buice considered law enforcement to be his job. Therefore, he initially concentrated his job search on law enforcement jobs. (Buice PMSJ Decl. ¶ 20). *See also* (Buice Depo. 272:20-23) ("My job's law enforcement and doing stuff like that[.]").

33. To find a job in law enforcement, Mr. Buice contacted the various law enforcement contacts – "chiefs and sheriffs" – he had developed over his decades-long career and inquired about job openings. (Buice Depo. 270:20-272:23; Buice PMSJ Decl. ¶ 21).

34. Unfortunately, every law enforcement contact told Mr. Buice the same thing – that they could not hire him while he was under investigation by POST and that he had to wait "on P.O.S.T. to clear their investigation." (Buice Depo. 270:20-272:7; Buice PMSJ Decl. ¶ 22).

35. However, even after the POST investigation was concluded, Mr. Buice's law enforcement contacts told him that they could not hire him because his POST file still said he had retired in lieu of termination and because that file reflected that the Gwinnett County Sheriff's Office had classified him as "not eligible for rehire." (Buice PMSJ Decl. ¶ 23).

**Mr. Buice's Post-Termination Employment and Compensation**

36. Starting in November 2021, Mr. Buice worked part-time for JDS Holding, LLC. He provided part-time services as security and a driver for a particular individual 2-3 times per month and was paid at a rate of $250 per day. (Buice Depo. 266:18-267:24; Buice PMSJ Decl. ¶ 24).

37. Mr. Buice began full-time employment with United Tactical System, LLC starting in January 2022 – the month after POST concluded its investigation. (Buice Depo. 264:19-265:13; Buice PMSJ Decl. ¶ 25).

38. In his position with United Tactical, Mr. Buice provides training to law enforcement on de-escalation and non-lethal use of force. (Buice Depo. 264:19-265:13; Buice PMSJ Decl. ¶ 26).

39. When he was hired in January 2022, United Tactical paid Mr. Buice an annual salary of approximately $65,000. (Buice PMSJ Decl. ¶ 27).

40. Starting in or around August 2022, Mr. Buice received a raise from United Tactical to an annual salary of approximately $72,500. (Buice PMSJ Decl. ¶ 28).

41. Finally, starting March 2024, Mr. Buice received a promotion from United Tactical, with a raise in his annual salary to approximately $95,000. (Buice PMSJ Decl. ¶ 29).

**Defendants' Failure to Provide Evidence re: Failure to Mitigate Defense**

42. During discovery in this case, Plaintiff asked Defendant in an Interrogatory to identify (i) every additional effort Defendants contend Plaintiff was obligated to expend to locate comparable employment, (ii) the anticipated cost to Plaintiff of such additional efforts, (iii) the date upon which Plaintiff would have found comparable employment, (iv) the amount by which such efforts would have mitigated Plaintiff's damages, (v) whether Defendants took any actions that were likely to or calculated to interfere with or assist with Plaintiff's mitigation efforts, and (vi) every position for which Plaintiff is qualified that Defendants contend he should have received. (DEF Disc. Responses # 46).

43. Defendant's entire Response to this Interrogatory reads as follows: "Defendants are still evaluating Plaintiff's mitigation efforts and have not yet

deposed Plaintiff. As such, Defendants will supplement their response as necessary following the taking of Plaintiff's deposition." (DEF Disc. Responses # 46).

Respectfully submitted this 15th day of March, 2024.

**BARRETT & FARAHANY**

s/ *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110

*Attorney for Plaintiff Joe Buice*

P.O. Box 530092
Atlanta, GA 30353
(404) 214-0120
matt@justiceatwork.com